UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KELLY GRIBELUK,

               Plaintiff,

      v.

NETWORK CAPITAL FUNDING
CORPORATION,

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:
:
:
:
:
:
:
:
:
:
:
:
:
:

<u>ECF CASE</u>

No. _____

COMPLAINT

<u>JURY TRIAL DEMANDED</u>

<u>NATURE OF CASE</u>

1.     Plaintiff Kelly Gribeluk ("Plaintiff") asserts violations of the New York City Fair Chance Act, N.Y.C. Admin. Code § 8-107(11-a) against her former employer, Defendant Network Capital Funding Corporation ("Network Capital" or "Defendant").

<u>THE PARTIES</u>

2.     Plaintiff was, at all relevant times, an adult individual, residing in New York County, New York.

3.     Upon information and belief, Defendant is a domestic corporation that is organized and exists under Nevada law, and is authorized to conduct business in the State of New York, with its corporate headquarters located at 7700 Irvine Center Drive, 3rd Floor, Irvine, CA 92618.

<u>JURISDICTION & VENUE</u>

4.     This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a)(1), as this action is between citizens of different States and the amount in controversy exceeds the sum of $75,000.

5.      Venue is proper under § 1391(b)(2) as a substantial part of the events giving rise to the claims occurred in this District.

6.      For jurisdictional purposes, Defendant is considered a resident of the State of California.

<u>THE FAIR CHANCE ACT</u>

7.      New York City has determined that "there is no greater danger to the health, morals, safety and welfare of the city and its inhabitants than the existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences, including those based on . . . conviction or arrest record." N.Y.C. Admin. Code § 8-101.

8.      On October 27, 2015, New York City amended the New York City Human Rights Law ("NYCHRL") with the Fair Chance Act, which makes it unlawful for "most employers, labor organizations, and employment agencies to inquire about or consider the criminal history of job applicants until after extending conditional offers of employment." *NYC Commission on Human Rights Legal Enforcement Guidance on the Fair Chance Act*, Local Law No. 63 at 1 (2015); *see also* N.Y.C. Admin Code. § 8-107(11-a)(a)(1)(3).

9.      N.Y.C. Admin. Code. § 8-107(11-a)(b) provides the following procedures for inquiring into criminal backgrounds, any deviation from which is unlawful:

> After extending an applicant a conditional offer of employment, an employer . . . may inquire about the applicant's arrest or conviction record if before taking any adverse action based on such inquiry, the employer, employment agency or agent thereof (i) provides a written copy of the inquiry to the applicant in a manner to be determined by the commission; (ii) performs an analysis of the applicant under article twenty three-a of the correction law and provides a written copy of such analysis to the applicant in a manner to be determined by the commission,

which shall include but not be limited to supporting documents that formed the basis for an adverse action based on such analysis and the employer's . . . reasons for taking any adverse action against such applicant; and (iii) after giving the applicant the inquiry and analysis in writing pursuant to subparagraphs (i) and (ii) of this paragraph, allow the applicant a reasonable time to respond, which shall be no less than three business days and during this time, hold the position open for the applicant.

10.    Article 23-A of the New York Corrections Law ("Article 23-A"), which is incorporated by the Fair Chance Act, prohibits employers from denying employment to an individual "when such finding is based upon the fact that the individual has previously been convicted of one or more criminal offenses, unless" employers can show either "a direct relationship" between the conviction(s) and the job or "an unreasonable risk to property or to the safety or welfare of specific individuals or the general public." N.Y. Corr. Law § 752.

11.    To determine whether a direct relationship or unreasonable risk exists, Article 23-A requires employers to consider the following eight factors before taking any adverse action on the basis of a job applicant's criminal record:

(a)  The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.

(b)  The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.

(c)  The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.

(d)  The time which has elapsed since the occurrence of the criminal offense or offenses.

(e)  The age of the person at the time of occurrence of the criminal offense or offenses.

(f) The seriousness of the offense or offenses.

(g) Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.

(h) The legitimate interest of the public agency or private employer inprotecting property, and the safety and welfare of specific individuals or the general public.

N.Y. Correct. Law § 753.

12.     Employers may not deny employment to applicants based on their criminal histories without first performing an analysis of the Article 23-A factors and then providing the applicants an opportunity to respond to their analysis. Prospective employers must also allow applicants to submit evidence of rehabilitation and good conduct to be considered in their analysis. N.Y. Correct. Law § 753(g).

13.     The Fair Chance Act does not require an aggrieved party to prove any injury beyond a violation of the law itself. N.Y. Admin. Code §§ 8-102, 8-107(11-a)(g), 8-502.

14.     It is a *per se* violation of the Fair Chance Act to rescind an employment offer without providing the applicants an opportunity to respond to the employer's analysis.

<u>STATEMENT OF FACTS</u>

15.     Defendant provides funding for mortgages, refinancing and home loans.

16.     In April 2021, Defendant hired Plaintiff to participate in a 2-month mortgage internship program, after which it agreed to offer her a permanent position if she passed a mortgage exam.[1]

---

[1] All dates and date ranges are based on Plaintiff's best, good-faith estimates.

17.    Plaintiff did not pass her mortgage exam and Defendant, therefore, required her to continue working in the internship program.

18.    On June 17, 2021, Plaintiff informed Dennis Fitzgerald (Intern Supervisor) that she did not want to continue working in the internship program and that she, instead, wanted to work in a different position at Network Capital that would allow her to grow in the company. He, in response, informed her that a recruiter recently resigned from Network Capital and that he would highly recommend her for that position because she was a very valued employee.

19.    In June 2021, Plaintiff interviewed on three separate occasions for a recruiting position at Network Capital.

20.    In the beginning of July 2021, Justin Bunkis (VP Talent Acquisition) informed Plaintiff that he was "100% ready to move forward" with hiring her for the recruiting position, but was waiting for the CEO's approval.

21.    On July, 9, 2021, Bunkis informed Plaintiff that she was approved for the recruiting position and directed her to spend the remainder of the day with Nicole Ospina (Corporate Recruiter) so that she could train her. He further informed her that he was going to call Ospina and Fanta Inthavong (Corporate Recruiter) to tell them that she had been officially hired.

22.    Later that day, Ospina informed Plaintiff that Inthavong was scared of Plaintiff because she searched her name via Google and learned that she was convicted of conspiracy to commit murder in 2017. Ospina also confirmed that Fitzgerald, Bunkis and Travis Dick (Sales Director) all knew that she was previously convicted of a crime.

Fitzgerald also knew that Inthavong was scared of Plaintiff and that Plaintiff knew that Inthavong had said that about her.

23.     Later that day, Fitzgerald informed Plaintiff that the recruiting position for which she was hired was frozen and that she would no longer be able to work in that role. This rationale was a thinly-veiled attempt to cover up the discriminatory animus underlying Defendant's decision to rescind the job offer. Ospina, in fact, told Plaintiff that Inthavong called Defendant's HR Department after Plaintiff was hired and informed HR that Plaintiff has a criminal conviction history. Ospina also told Plaintiff that the position was not frozen and that Defendant is still actively looking for a candidate to fill it.

24.     Defendant rescinded the job offer because of Plaintiff's criminal conviction history.

25.     Defendant, upon information and belief, did not perform an Article 23-A analysis before rescinding Plaintiff's job offer.

26.     Defendant did not provide Plaintiff with an analysis on her criminal history and why it was revoking its offer based on that history.

27.     Defendant did not give Plaintiff an opportunity to respond to its analysis of her criminal history and how it relates to the offered position.

28.     Defendant cannot show that a direct relationship exists between Plaintiff's conviction and the recruiting position, nor that "an unreasonable risk to property or to the safety or welfare of specific individuals or the general public." N.Y. Corr. Law § 752.

29.     Defendant did not allow Plaintiff to submit evidence of rehabilitation and good conduct.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF THE FAIR CHANCE ACT

30.     Plaintiff realleges every allegation of the preceding paragraphs as if fully set forth herein.

31.     Defendant denied employment to Plaintiff because of her criminal conviction.

32.     Defendant violated the NYCHRL because it, upon information and belief, rescinded Plaintiff's job offer on the basis of her criminal conviction history without conducting an Article 23-A analysis.

33.     If Defendant conducted an Article 23-A analysis, it violated the NYCHRL by not allowing Plaintiff to respond to it before rescinding her job offer.

34.     Defendant violated the NYCHRL by not providing Plaintiff with its analysis of her criminal history and the offered position.

35.     Defendant violated the NYCHRL by not providing Plaintiff an opportunity to respond to its analysis of her criminal history and the offered position.

36.     Defendant violated the NYCHRL by not permitting Plaintiff an opportunity to submit evidence of rehabilitation and good conduct.

37.     As a result of Defendant's discriminating against her, Plaintiff has suffered and continues to suffer, *inter alia*, loss of wages, loss of employment opportunities, loss of other employment benefits, and emotional distress.

38.     As a result of Defendant's conduct, Plaintiff can recover punitive damages against it.

39.     In addition to damages, Plaintiff seeks injunctive and declaratory relief to correct Defendant's discriminatory policies and practices by compelling it to comply with the Fair Chance Act's procedures.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

1.     Accepts jurisdiction over this matter;

2.     Impanels and charges a jury with respect to the causes of action;

3.     A declaratory judgment that the practices complained of herein are unlawful under the NYCHRL;

4.     Injunctive relief to correct Defendant's discriminatory policies and practices;

5.     Back pay, front pay, and all benefits along with pre and post judgment interest;

6.     An award of punitive damages;

7.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

8.     Such other and further relief as this Court deems just and proper.

<u>JURY DEMAND</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions

of fact the Complaint raises.


Dated:  New York, New York
        October 4, 2021

                        LIPSKY LOWE LLP


                        <u>s/ Douglas B. Lipsky</u>
                        Douglas B. Lipsky
                        Sara Isaacson
                        420 Lexington Avenue, Suite 1830
                        New York, New York 10170-1830
                        Tel: 212.392.4772
                        Fax: 212.444.1030
                        doug@lipskylowe.com
                        sara@lipskylowe.com
                        *Attorneys for Plaintiff*